Good morning. We appreciate the appellant indicating how much time he would like for a rebuttal. Would the clerk call the first case, please? 14-17-17 Newell Window Furnishings v. International Union of Automobile, Aerospace, and Aeroportals, Equipment Workers of the United States of America. For all items not to exceed 15 minutes per side, the clerk will now call the roll. Thank you, Your Honor. Three minutes for a rebuttal. Aye. May it please this Court, Jack Fuchs on behalf of the appellant, Newell Window Furnishings. This is a case in which the district court, sua sponte, determined to pursue a res judicata compulsory counterclaim under 13a and common law compulsory counterclaim. That was not the basis of the motion filed by the defendant. We believe that the district court committed error on all three points and that those errors relate to two fundamental errors that are reflected in the court's opinion. The first error is the statement on page three of the opinion that, quote, health care benefits for bargaining unit retirees. Newell 3, this case, does not concern that issue. I was curious. What remedy do you want in Newell 3 in terms of do you want the UAW to pay the retirees health care? No, Your Honor. I think that that is actually the second error that the district court made. We remain primarily responsible. There is no direct payment by the UAW to the retirees for anything. But didn't you, don't you ask for punitive and compensatory damages for all of your costs and so forth? Your Honor, we do seek damages for our costs. I think that the nature of what those damages would be would be set forth under this court's ruling in Anchor Motor and in the Northern District of Ohio's Dura Mechanical case. Can you tell us definitively, Ben, that you do not, you are not asking the UAW to pay either the retiree benefits or the insurance coverage for the retirees? Well, it is clear that we're not asking for the UAW to pay for any of that. What we are asking for as one of the damages is that the UAW provide as a remedy for the breach of the collective bargaining agreement to Newell. Newell's damages suffered in making the payments for insurance. It's actually, in most, I think all of the health care, it's a self-insured plan, Your Honor. So isn't that in effect undoing Newell 2? Not at all. It would be undoing Newell 2 in no way. Undoing Newell 2 would be to say the retirees get no health care benefits. That is the concept that was the Seventh Circuit's Martino case. When you have a prior decision, a prior judgment here in Bender 2 or Bender, the Newell 2 case, but Bender is Newell is liable for providing a wide array of benefits. And that judgment is not impacted in any way by this lawsuit. What about paragraph 41 of your complaint? File 10-07-11, where you say, no less significantly, the UAW's breach of the shutdown agreement has exposed Newell to obligations to certain retirees with respect to reimbursement of Medicare Part D and other retirees with respect to the cost of retiree health benefits. There's no question that that is a true statement. And you're not asking for part of your remedy to remove that exposure? No, we are not asking as part of our remedy to remove that exposure. We are simply, as in any third party, this is essentially what would have been if it had been brought in the prior lawsuit, a third party complaint. Well, isn't your premise that you would not have had to pay either the benefits or the attorney's fees in the absence of the union's action? I think that is a true statement, Your Honor. But that doesn't undo in any way. Well, let's say it doesn't undo the legal ruling, but it certainly seeks to relieve the financial responsibility from you to the UAW, doesn't it? Yes, it seeks to hold the UAW responsible for the breach of its collective bargaining agreement promise. It also seeks to hold the union responsible for your violation of ERISA, correct? To the extent that there has been a finding that there was a violation of ERISA, yes, Your Honor, that is true. And what it's basically doing, and quite honestly, the issue on the violation of ERISA certainly has been heightened, if one would like, by the most recent Supreme Court decision in Tackett, which undid the Sixth Circuit precedent. There's nothing in the shutdown agreement that suggests that the union is supposed to indemnify you for your own wrongdoing, is there? Ah, no, Your Honor. What it says is that they're not allowed to bring any lawsuit against us for any breach that we have, except with respect to the shutdown agreement. That is what Judge Quist held. That issue was never pushed beyond Judge Quist so holding, and so by the second and third amended complaints, which Judge Jonker in the district court approved, whether you call it by Rule 15 or Rule 21, by order, it eliminated the UAW as a party following up on Judge Quist's decision. Wasn't the UAW still a party under Rule 54B until the final judgment in the case? Not at all, Your Honor. As a matter of fact, under, this court has actually held that parties can be dismissed in a variety of ways. Rule 54B is certainly one way that that can be, but that isn't the only way. Another way is a very simple situation under Rules 15 and 21. There was a Rule 15 amendment. The Rule 15 amendment in the second amended complaint eliminates the UAW as a party to the case. It is not a party plaintiff at that point. The third amended complaint, again pursuant to Judge Jonker's rule, granted, that was not, that did not have the UAW as a defendant. The Sixth Circuit has expressly held that it makes no difference whether Rule 15 or Rule 21 is used to eliminate a party with court order. This court held that in Sovereign Machine and Equipment Company versus MRF. That's 181 F. 3rd, 759 and 763. It is a situation where that holding under civil rules basically says, you're out. That's the end of the discussion. You can't read Rule 54 out of the picture. And what the import of Rule 54 is that at the point of dismissal, yes, you know, the UAW is in no position to seek further relief in the case at that time. But judgment has not been entered on the claim. And so under Rule 54, they're not out of the case as a party. I mean, Rule 54 is very explicit on that point. And I don't see how you get around Rule 54 in this context by artificially labeling them something that the rule specifically says they are not. Well, quite honestly, Your Honor, there are two points. One is Rules 15 and 21 do allow an elimination of a party. You'd have to be reversing public Sixth Circuit decisions to go contrary to that. That's point one. The second point is a very different one, and that is 54B, even if it were applicable, and we submit on that point, that that's not relevant to whether or not they stayed a party because they didn't on the pleadings. There isn't an obligation once a party has been dismissed, as Judge Quist's opinion did, for us then to try to bring them back as a third-party defendant, which would be the proper way we would be doing that. Why? Well, if it's a compulsory counterclaim, there is an obligation on your part to seek to bring them into that litigation on a third-party claim. There would be. Well, actually, Your Honor, there isn't a compulsory counterclaim if the party is no longer a plaintiff. And we have cited a number of cases for that point that the Sixth Circuit has issued. Well, whether you can quibble whether or not at some point, you know, but, I mean, the point is they were a party to the litigation. Yes, Your Honor. They certainly were prior to our motion to dismiss, and upon the motion to dismiss, they were struck as a party. Why in your first answer, which was filed after they were dismissed, did you raise the eighth affirmative defense that specifically raises, purportedly as a defense, this claim that you are now raising in a separate action? Well, first of all, it was only as a defense. Defenses do not constitute a counterclaim or such. If they actually do, then, in fact, we still have that claim viable because this was a summary judgment in Bender. Summary judgment wouldn't have eliminated a counterclaim because it didn't make any ruling on it. But that's on the side. The reason why it was done, Your Honor, is because we had to address a pleading that still listed the UAW as a named plaintiff. And in so doing, we also made denial of, we basically recognized that the UAW is a bargaining entity on behalf of active union employees. We made various other affirmative responses. Why? Because the pleading hadn't been rewritten to address Judge Quist's decision. By the second amended complaint and the third amended complaint, the complaint was rewritten to adopt and incorporate Judge Quist's decisions, in which Judge Quist had already dismissed the UAW. The UAW wanted to be a plaintiff, which they did originally. Yes, Your Honor. And you had sued the UAW in the case in the Northern District of Illinois. Yet, you moved to get the UAW dismissed on 12B6 grounds from Newell II. Yes, Your Honor. How could the UAW protect itself against this third litigation that you're bringing now? Well, Your Honor, they would have protected themselves by not violating the shutdown agreement. But that's before any litigation. When you are defending in Newell II, is there any way that the UAW should have protected itself that you think they failed? Well, I think, quite honestly, Your Honor, at that point, they would have had the opportunity to file a counterclaim in the Northern District of Illinois. Well, no, but that case has been dismissed by the Northern District of Illinois, and the Seventh Circuit has affirmed that. So we're now in Newell II. Yes, Your Honor. And you have moved to dismiss the UAW because of the shutdown agreement. Yes, Your Honor. And Judge Quist agrees with you. Is there anything that the UAW should have done at that point that they didn't do to protect itself against this third case that you've brought? Well, at that point, Your Honor, they have already breached the shutdown agreement by soliciting people, financing the litigation, which they continue to do, and which we learned about during the fee hearing most clearly. Well, isn't that kind of beside the point? I mean, the fact that the conduct has already occurred has nothing to do with whether it was a compulsory counterclaim. Well, it is. I mean, in fact, that argues more strongly for its being a compulsory counterclaim, if anything. Well, Your Honor, the problem with it being a compulsory counterclaim is it doesn't come out of any of the same transactions. That is, the shutdown agreement is not part of the vendor complaint. It has nothing to do with the lawsuit, contrary to some statements. Everything in the complaint relates to a very simple issue. Do you have an obligation, Newell, to provide benefits? It's your theory of relief that actually makes it clearly part of the same transaction or occurrence, because your theory is that the retirees would not have sued without the UAW's involvement and support. And so, you know, your theory would have been theoretically possible for the plaintiffs to have sued you entirely independent of the union. And perhaps then, you know, you'd have a point. But that's not what happened. Your whole theory is that they were part and parcel of the same thing. Well, Your Honor, Judge Quist expressly held on page 12 of his opinion that they are not part and parcel of the same thing. If they had all been part and parcel of the same thing, our arguments would have been much stronger on why we would have been able to have a dismissal of the retirees. They were not. And if I can at least answer. Your time is up. If you want to give a quick answer to her question, that would be fine. And Judge Quist made it very clear. We couldn't do anything more. I mean, his express opinion regarding the. . . I'm familiar with the part of the opinion you refer to. Thank you. I appreciate that, Your Honor. Thank you. May it please the Court. Andrew Roth on behalf of the UAW. Contrary to Newell's assertion, I believe that the District Court's decision on res judicata was exactly correct and should be affirmed. Rule 54B is explicit. When you have a multi-plaintiff case and one plaintiff is dismissed, the rule explicitly states that unless the District Court enters a final judgment of dismissal as to that plaintiff, it is an interlocutory order subject to revisitation, and it does not work. It's not a final judgment, but is it your position that the party that's been dismissed stays active in the litigation? No, absolutely not. So it's what, a nominal party? No, it's a party subject to a counterclaim. I mean, for these purposes, clearly. But not anything else? It can't be. . . Not subject to depositions or discovery requests or anything else, but just to be served with a counterclaim? It would probably be subject to depositions, but it couldn't. . . A dismissed party would be subject to go to depositions even after that party has obtained a dismissal order from the District Court? I think so. I certainly think the plaintiff could not actively prosecute the case. That would be flouting the interlocutory order. It would have to seek reconsideration if it wanted to actively. . . Well, I mean, the difference, whether it could be deposed would depend on whether they had discoverable information. I mean, because it wouldn't depend on whether it was a party. Yeah, I mean, if it wasn't subject to. . . Theoretically. . . It would certainly be. . . If the former party is still a party, they have to respond to all this, and I don't think that's what the rule is. I mean, are you saying that they have to be active in everything? I'm saying you could not be active. You could not be active. Okay, so it's really a passive party until the final judgment's rendered, is that it? It's a party. Okay, and if you're served with a counterclaim, you've got to answer the counterclaim, even though you've been dismissed? Absolutely. You do? Absolutely. You're still a party to the case because that ruling is not final. Well, for appeal purposes. But you're saying you would be defaulted if you didn't answer a counterclaim when you already won the case? I mean. . . The UAW lost because they were dismissed. They were a plaintiff. Under that rule, the rule is not just for appeal purposes. The rule is actually judgment. It's titled judgment. What constitutes the judgment of the court? It is not a final judgment. So the UAW certainly. . . I mean, there are things that the UAW can do as a plaintiff. It could move for reconsideration of that order. It could file a motion under 54B asking the court to make that a final judgment for purposes of allowing the UAW to appeal. So what should we do with the fact that subsequent amended complaints did not list the UAW as a plaintiff? I mean, the fact that Newell is arguing that they were dropped in the second amended complaint presupposes that they were still there. The second amended complaint was filed two years after the answer. Not quite two years. It was March of 2009. So what Judge Iacocca said was they should have. . . Having raised a defense, having inserted that issue into their answer and also making it the linchpin of their motion to dismiss, that was in 2007. When they first pled, they should. . . That what the plaintiffs thought is not the operative thing. I mean, all the complaint indicates is how the plaintiffs were treating it. It doesn't have anything to do with what Rule 54 is. Well, that's exactly right, and it goes to what I was saying to Judge Griffin in response to Judge Griffin's question. I think the other plaintiffs thought that, well, since they can't be an active party given that role, there's no point in listing them. No party could have read Rule 54, and I don't even think today that it's mentioned in Newell's briefs. But, you know, it wouldn't make any difference to its applicability. Correct. I mean, there are ways to voluntarily, finally voluntarily dismiss somebody from a case, which is to follow Rule 41 voluntary dismissal. Rule 54 is absolutely clear. It may seem anomalous in certain respects, Your Honor, but it is absolutely clear that. . . It's anomalous here that the losing party is seeking their attorney fees and costs for losing. I mean, that's the anomaly, I think, and that's what Newell's tried to do here, right? Well, yeah, based on a breach claim, which I think is. . . Well, a breach claim that, I mean. . . Which is not a. . . The merits of the health insurance is what they lost. And their theory is that the retirees, I guess, would never have asserted their own rights had not the UAW been there. But why would they not assert their own rights? When they have the rights, they're meritorious.  That goes to our approximate cause, and that's our third ground, that as a matter of law. . . It's a real stretch. It's a real stretch. I mean, given the availability of attorney's fees on their wrist, or given the damage to the retirees from losing out on these health benefits for life. I mean, I think it's almost a foregone. . . Why would they not bring their own rights? I think it's almost a foregone conclusion they would. In the first Newell case, Newell was the plaintiff, and he sues not only the retirees, but the UAW. Is that right? That's correct. But what are his claims? What are their claims against the UAW in the first Newell case? They saw a declaratory judgment that there was no lifetime health benefits. They saw a ruling on the merits in the Seventh Circuit, because they thought that would be a more hospitable forum than the Sixth Circuit, by virtue of Yard Man, etc. That was what that was. That was limited to that, then. Yeah. And, in fact, they decry this alleged breach of the shutdown agreement. What Judge Yonker said, and this court actually found merited that, during the fee proceeding, the UAW had to sue, because otherwise they would be giving in to the forum shopping maneuver in the Seventh Circuit. Because that would have given—and this court said that reasoning in its fee decision is entirely right. The UAW had no choice but to join in that, because they were sued, and they were sued on a theory that was totally antithetical to the breach theory in this case. Why were they named by Newell as a defendant in the first case in the Northern District? Well, because I think Newell understood that, you know, if they were going to have a hope of proceeding in the Seventh Circuit, they had to bring all parties in. And I don't think Newell even thought about the issue of an alleged breach. They could have brought a declaratory judgment action saying, please declare that the UAW can't sue us, only the retirees can sue us. They didn't do that. They saw a decision on the merits on the theory that the UAW could sue them for breach of the collective bargaining agreement. Isn't kind of a—I think one of the things that we're sort of struggling here with, or that I'm sort of thinking about, I guess the argument would be that rather if Newell wanted to have this issue about the breach of the shutdown agreement in the case as a basis for relief, its obligation was to decide to go on—and it wanted to insert those issues into the case. Its obligation was to go ahead and assert the compulsory counterclaim as opposed to seeking the dismissal of the UAW, which is what it instead did. Right? Well, it actually worked out the other way. They sought the dismissal. They didn't seek the dismissal of the UAW, Your Honor. They sought the dismissal of the entire case. There was no separate argument to dismiss. They said that because of the breach, that sullied the whole—that tainted the entire litigation. And not only should the UAW be dismissed, but the retirees' claims should be dismissed. Judge Crist rejected that, said that the UAW breached it, but that is not a proper remedy to dismiss the retirees' claims. So the retirees' claims went on. Well, so at that point, before—you know, at that point, didn't you all have an obligation to say, Judge, I ask that you reconsider the dismissal. We are filing a counterclaim against the UAW. But my point is under 54, they didn't need to ask the judge to—they could, and they did. No, I understand that's your position. I'm just not sure. I'm just not sure. I mean, certainly under the terms of Rule 54, no judgment has been entered against them. But I'm not sure they're just sitting there in the status you suggest, available for the filing of a counterclaim given the dismissal. So I'm just not sure that that's quite right. But I don't—I mean, I'm not saying it's wrong. I'm just saying it's a little strange. I think a plaintiff would be hard-pressed to say, you can't turn around and sue me because I haven't been finally dismissed. I think maybe at that point, you know, if they had asserted a counterclaim, I think the best the UAW could have done— Do you know of any case that deals specifically with the situation I ask about? I don't, Your Honor. We researched this up and down, and I think this is fairly sui generis. Suppose that Newell 2 involved only the retirees suing Newell. Could Newell then bring Newell 3, where Newell sues the UAW for breach of the shutdown agreement? I think so. I think the reasoning of Judge Yonker's opinion I think is absolutely right. It's really a splitting-of-your-cause-of-action theory. The UAW did sue. The UAW was found not to be a proper plaintiff but was not finally dismissed from the case, so they were available on the 54 to be counterclaimed against. What Newell did is a classic— If you're a plaintiff, there's a classic rule against splitting-your-cause-of-action. For a transaction that occurs, you can't sue and say, here's my theory and I want to recover these damages. Then you lose, then you turn around and say, well, I have a new theory on the same transaction, same set of facts, or same alleged breach. Then that's a clear violation of the rule against splitting-of-the-cause-of-action. That's, in essence, what Newell did as a defendant here. They asserted the breach as an alleged offense to the continuation of the action, but they didn't actually inject the other part of that claim of breach, which is resulting damages. So they did what a plaintiff would be thrown out of court for doing on res judicata grounds, clearly. They just did it as a defendant. But I think the same principles of judicial efficiency, of fairness to the parties, of getting all issues resolved in a single case, when you're the one who injected it into the litigation to begin with. When you look at the eighth defense that they raised, part of their defense is that they want to order the UAW to reimburse the defendants for the costs incurred, including legal fees. So isn't that, in a sense, a counterclaim by its own terms? It is, but if you read it that way, they didn't prosecute the counterclaim and they lost. They asserted it only... They didn't assert the counterclaim on the party against whom that relief was sought. They didn't assert it as a counterclaim. They never sought that order. They just put it in their pleading. I don't want to stand on ceremony in terms of what it was called, but they never prosecuted that claim. Doesn't that support your... Absolutely. I mean, if you read it as, in essence, an unlitigated counterclaim, then the decision below is even on firmer ground. If you were going to file a counterclaim, you presumably, most lawyers, would call it a counterclaim. They would serve the claim on the party against whom the relief was being sought, and they would prosecute it as a claim for relief rather than just a defense to talk about. Right? Yes. Yeah, I mean, so clearly that wasn't... Clearly that was a strategic judgment on their part. I agree with Judge Moore. It's kind of a counterclaim, sort of. But it's not... But when you say it was not prosecuted as a counterclaim, it's what you mean that all those steps that would normally be taken... They never... ...to do a counterclaim. Summary judgment, you know, or whatever, you know, based on Judge Quist's ruling. You know, they didn't make any effort to recover, in that case, the affirmative relief they claimed to be entitled to. And that's the basis of the decision below. The motion by Newell to dismiss the case as to both defendants was based upon the shutdown agreement and the alleged breach of it. Is that right? That's right. So that's what... They brought the shutdown agreement front and center on their motion to dismiss. And although they now claim that that also entitles them to indemnification for attorney fees and costs, when bringing that motion to dismiss based upon the shutdown agreement, they did not request attorney fees and costs for indemnification. And they couldn't, right? In fairness, they couldn't do that in the context of a 12B6. They would have had to do something beyond that in the nature of a counterclaim. I mean, the occasion wouldn't have arisen on a 12B6 motion to do that. But they could have at any time said, based on your theory, you know, give us an injunction, stop them from funding it, or order them to pay what they continue to fund if they do continue to fund it. I mean... They argue that... They actually asked for that. They just didn't follow through. They argue that their attorney fees and costs, they don't know the final figure until all the litigation is going on. Well, they obviously have some damages already. Correct. They say their claim doesn't accrue until all their damages are compiled. Is that correct? That's what they say. They clearly have present damages. What about the Drivett case? Does that answer the question? I'm not sure it does, Your Honor. I see my time has almost expired. The Drivett case was a Michigan law, you know, based on Michigan law, and I know Judge Yonkers cited it. We're not really relying on that. I did want to, if the... Have you finished answering Judge Griffith? Well, I guess I'm asking. I mean, does a claim accrue when you've incurred damages, or does the claim accrue when you've compiled all the damages? I think the claim accrues when you've incurred any damages, because you have a current claim, and they could have easily... At that point, they've got some, if there is a viable theory for this indemnification, they have damages at the time. Absolutely, and they could pay for those. There's nothing to prevent them from paying for those damages and saying, by the way, the damages are continuing to accrue. We should get those, too. As a practical matter, if the UAW, you know, if they appeal that and then it's upheld, they're not going to continue to fund something when they've been held liable in damages for doing it. So that issue would have been joined and settled right in the initial litigation, but they didn't do it. Is Newell, in Newell 3, in the complaint filed 100711, asking for more than attorney's fees and litigation costs to be paid by the UAW? Absolutely. They're doing exactly what Judge Yonker said they're doing. They're trying to hold the UAW economically responsible for everything that they did. For all of the benefits. All the litigation. Whatever the benefits cost them, the UAW should pay. So the retirees, true, you know, won't lose out on their benefits. Retirees wouldn't lose under the theory of... Correct, but Newell would be, you know... Made whole. Be made whole, have no economic consequences. And, you know, if I may, I just see my time has expired, but you asked, how could the UAW have protected itself? Yes. The only thing the UAW could have done would be, at the end of the day, when that interlocutory ruling became final, bring a cross-appeal from their appeal saying they were improperly dismissed as a plaintiff. What's wrong with requiring the UAW to do that? I think it would be harsh and sort of unfair to the UAW to expect them to have done that to preserve their rights, because that would have required them to inject an issue into the appeal to this court that had no litigation consequence. Because the fact that the UAW was dismissed as a plaintiff had no litigation consequence. The retirees went on, they prosecuted the claim to a successful conclusion. The UAW would have been in a position that they were stopped from raising that claim because they didn't bring a purposeless, really vexatious cross-appeal to this court using up this court's resources. The only reason the UAW would have done that was because it foresaw the Newell III action and was trying to head off at the pass a collateral estoppel argument. That's what's wrong with that argument, Your Honor. I think that's totally adverse to the purposes of the collateral estoppel rule. Thank you. Your Honor, several points. As to 54B, there are cases that hold, even where a 54B judgment has not been entered, that the party that's been dismissed is no longer a party. The Seventh Circuit in Elmer v. Henderson, 227F3rd, 1009-1012, so held. It's on pages 3 and 5 of our reply brief. The Western District of Michigan, under Rule 54, even where a court does not dismiss of all claims against all parties, the dismissed parties are no longer, are, quote, no longer parties to the lawsuit, end quote. That's at 1989, U.S. District, Lexis, 17606, at 2. We cited it in our brief. Those address that point directly. The point as to what could have been done, if, in fact, there had been this concept of a counterclaim being addressed or some put on a notice in the first answer, the UAW would have had a good reason to come in and file its notice of appeal of the adverse decision against it. The reason why it was not, it did not appeal, was because it recognized that it was no longer a party. The situation, additionally, is, with respect to just the attorney's fees and the expenses, that's been a remedy recognized by the Sixth Circuit in Anchor Motor in a context very similar to this and in the Durham Mechanical in an identical scenario in which the UAW did win and yet was on the underlying merits, but because it brought a suit that was in breach of the shutdown agreement, it had liability for damages. This is a context in which the bulk of the activity by the UAW was very much post-complaint by the UAW. And Judge Moore, in your Raleigh decision, addressed that issue very clearly. We cite Raleigh several times in our brief, primarily on collateral estoppel and on issue preclusion and claim preclusion, I misspoke. The issue there is you held, Judge Moore, that everything that was post-complaint was not merged into a plaintiff's post-complaint activity. That is a situation that is very much indistinguishable from this case. And then there's the United States v. Snyder case, which we cite in both our initial briefs and in our final briefs, as to whether or not there is a compulsory counterclaim in this context. In Snyder, the U.S. brought a complaint, I misspoke. In Snyder, Dr. Snyder and his medical group filed an initial complaint to stop the U.S. from cutting off his benefits, similar to a declaratory judgment action. The United States prevailed in that case but did not file any counterclaim to seek recoupment of the payments that had been made. After it did get a decision that was favorable to the United States, saying there is no right to these benefits, the United States then filed a separate lawsuit after the resolution of the prior case, saying, gosh, we're entitled to recoupment here. The motion to dismiss was based on, look, you have to either, it should have been, a compulsory counterclaim under Rule 13a. You had to file that in the prior lawsuit. They didn't. This court said no. Where you have a dismissal, prior to having to file, there isn't an obligation. In this case, we very much have a situation where this isn't a compulsory counterclaim because if it is, then essentially all third-party claims, that is, everything that we think belongs in Rule 14, becomes a compulsory counterclaim if the party against whom the claim for indemnification is sought and has been dismissed. I noticed in your complaint in Newell 3 that you called it interpleader. Was there a reason for calling it interpleader? It's because it should have said impleader, and that was a typographical error, and I apologize for our error. Impleader is the correct term. Interpleader it is not. Thanks very much. Thank you both for your argument. The case will be submitted. Would the court call any remaining cases? Thank you.